UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VADIM LOPEZ REYES, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>MI PUEBLO GREENSPRINGS, LLC, et )<br>al., )<br>)<br>Defendants. ) | Case Number: 2:19-cv-01584-JHE |

**MEMORANDUM OPINION**[1]

Plaintiffs Vadim Lopez Reyes and Jose Estrada bring this action against Mi Pueblo Greensprings, LLC, Mi Pueblo Supermarket, LLC, Mi Pueblo Supermarket #3, and Joel Rivera ("Defendants") alleging violations of the Fair Labor Standards Act ("FLSA").  (Docs. 1 & 10). Since that time, three more employees have filed consents to "opt-in" and join this action.  (Docs. 17 & 18).  On January 6, 2020, Plaintiffs filed a Motion for Conditional Class Certification and to Facilitate Court-Approved Notice Under § 216(b) of the FLSA.  (Doc. 21).  The motion is fully briefed.  (Docs. 23, 24, 25).  For the reasons stated below, the motion (doc. 21) is **GRANTED**.

**I. Factual and Procedural Background**

Plaintiff Vadim Lopez Reyes ("Lopez-Reyes") performed work for Defendants and was an employee within the meaning of 29 U.S.C. § 203(e)(1).  (Doc. 10 at ¶2, doc. 11 at ¶2).  Defendants assigned Lopez-Reyes to work at its Greensprings and Pelham grocery stores, where he worked as

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 14).

a butcher. (Doc. 10 at ¶10, 11, doc. 11 at ¶10, 11). Plaintiff Jose Guadalupe Estrada ("Estrada") performed work for Defendants and was an employee within the meaning of 29 U.S.C. § 203(e)(1). (Doc. 10 at ¶3, doc. 11 at ¶3). Defendants employed Estrada at its Pelham grocery store, where he worked as a deli worker and as a butcher. (Doc. 10 at ¶28, doc. 11 at ¶28, doc. 22-3 at ¶8).

Lopez-Reyes testified that Defendants scheduled him to work approximately fifty-six hours a week and that he often worked more than those scheduled hours. (Doc. 22-2 at ¶¶ 14-15). Defendants paid Lopez-Reyes a salary of $725.00 per week. (*Id.* at ¶9). Defendants did not pay Lopez-Reyes any overtime premium for hours worked over forty hours during the work week. (*Id.* at ¶16). Estrada testified that Defendants scheduled him to work approximately fifty hours per week from June 2019 through his date of termination. (Doc. 22-3 at ¶¶15-16). Estrada further testified that, prior to June 2019, Defendants scheduled him to work approximately fifty-four hours a week and that he often worked more than those scheduled hours. (*Id.* at ¶¶ 16-17). Defendants paid Estrada a salary of $550.00 per week. (*Id.* at ¶9). Defendants did not pay Estrada any overtime premium for hours worked above forty hours during the work week. (*Id.* at ¶18).

Opt-in Plaintiff Joel Quinonez-Nunez ("Quinonez-Nunez") testified that Defendants employed him as a butcher and that he worked at Defendants' Pelham and Greensprings stores. (Doc. 22-4 at ¶¶4-6, 9, 11). Quinonez-Nunez testified that Defendants scheduled him to work approximately fifty-four hours per week and that he often worked more than those scheduled hours. (*Id.* at ¶¶16-17). Defendants paid Quinonez-Nunez a salary of $ 650.00 per week. (*Id.* at ¶10). Defendants did not pay Quinonez-Nunez any overtime premium for hours worked in excess of forty hours during the work week. (*Id.* at ¶18).

Opt-in Plaintiff Salvador Quinones ("Quinones") testified that Defendants employed him as a butcher and that he worked at Defendants' Clanton and Greensprings stores. (Doc. 22-5 at

2

¶¶4-5, 10). Quinones testified that Defendants scheduled him to work approximately fifty-four hours per week and that he often worked more than those scheduled hours. (*Id.* at ¶¶15-16). Defendants paid Quinones a salary of $750.00 per week. (*Id.* at ¶9). Defendants did not pay Quinones any overtime premium for hours worked above forty hours during the work week. (*Id.* at ¶17).

These plaintiffs have all testified that the majority of their labor was manual in nature and consisted of cutting and packaging meat, taking customers' orders, customer service requests, stacking meat in coolers, receiving shipments and conducting inventory, and cleaning the butcher shop and grocery store. (Doc. 22-2 at ¶10, doc. 22-3 at ¶11, doc. 22-4 at ¶12, doc. 11-5 at ¶11). Plaintiffs have all testified that none of them have supervisory authority or the authority to hire/fire any employees. (Doc. 22-2 at ¶¶11-13, doc. 22-3 at ¶12-14, doc. 22-4 at ¶13-15, doc. 22-5 at ¶12-14). With the exception of Estrada's final paycheck, Plaintiffs testified that they were paid in cash. (Doc. 22-2 at ¶17, doc. 22-3 at ¶19, doc. 22-4 at ¶19, doc. 22-5 at ¶18).

Plaintiffs have also testified that they believe other former and current employees would join this lawsuit to seek unpaid overtime wages or any other wages if given notice and the opportunity to do so. (Doc. 22-2 at ¶20, doc. 22-3 at ¶22, doc. 22-4 at ¶20, doc. 22-5 at ¶22).

Lopez-Reyes and Estrada testified that they never observed any poster or sign explaining their rights as employees at Defendants' Greensprings or Pelham stores. (Doc. 22-2 at ¶21, doc. 22-3 at ¶23). Lopez-Reyes, Estrada, and Quinones each testified Defendants never issued them a W-2 or 1099 tax form for the years 2016, 2017, or 2018. (Doc. 22-2 at ¶18-19, doc. 22-3 at ¶20-21, doc. 22-5 at ¶19-20).

Defendants were served with the initial complaint in this action on September 30, 2019. (Doc. 10 at ¶¶30, 70; doc. 11 at ¶¶30, 70). Upon Estrada's arrival for his October 1, 2019 shift,

Defendants' attorney Albert J. Osorio called Estrada into a manger's office. (Doc. 10 at ¶¶31, 72; doc. 11 at ¶¶32, 72). "[B]y and through their attorney," Defendants decided "to terminate [Estrada's] employment." (Doc. 10 at ¶73, doc. 11 at ¶73). Defendants had notice of Estrada's participation in this FLSA action. (Doc. 10 at ¶74, doc. 11 at &74).

## II. Analysis

Section 216(b) of the FLSA authorizes action for unpaid overtime compensation against any employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Thus, to maintain a collective action under the FLSA, plaintiffs must demonstrate that they are "similarly situated." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008). Further, would-be plaintiffs in a § 216(b) collective action must affirmatively "opt-in" to the suit. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). In this way, § 216(b) collective actions differ from Federal Rule of Civil Procedure 23 class actions because under Rule 23, a person must affirmatively "opt out" if he or she wishes to abstain from the lawsuit. *See Hipp v. Liberty Nat'l Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001).[2] In the § 216(b) context, "once a plaintiff files a complaint against an employer, any other similarly situated employees who wants to join must affirmatively consent to be a party and file written consent with the court." *Morgan*, 551 F.3d at 1259. The FLSA does not provide specific procedures by which potential plaintiffs may opt-in, but the Supreme Court has held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. §216(b) . . . by facilitating notice to potential plaintiffs." *Hoffman-*

---

[2] Although *Hipp* addresses a collective action brought under the Age Discrimination in Employment Act, the same analysis applies to collective actions under the FLSA. *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003).

*La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *see also Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983). Describing the practical benefits of FLSA collective actions, the Supreme Court has stated as follows:

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution of one proceeding of common issues of law and fact arising from the same alleged discriminatory activity. These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.

*Hoffman-La Roche, Inc.*, 493 U.S. at 170.

The Eleventh Circuit has suggested a two-tiered process for district courts to manage collective actions. *Hipp*, 252 F.3d at 1218-19. At the first stage, called conditional certification or the "notice" stage, the district court makes a determination, based on the pleadings and affidavits on file, of whether it should authorize notice of the action to potential class members. *Id.* at 1218. Because the court has minimal evidence, the standard is lenient. *Id.* The district court must merely be satisfied that there are other employees who wish to opt-in, and that they are similarly situated to the original plaintiff "with respect to their job requirements and with regard to their pay provisions." *Morgan*, 551 F.3d at 1259 (quoting *Dybach v. Fla Dept. of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)). Indeed, this inquiry "typically results in 'conditional certification' of a representative class." *Hipp*, 252 F.2d at 1218. If the court conditionally certifies a class, court-supervised notice of the pendency of the action is then given to the potential class members, and they are afforded an opportunity to opt-in to the action. *Id.*

The second stage of the process is activated by the defendant filing a decertification motion following the completion of discovery. *Id.* At this stage, based on a fully-developed record, the court makes a determination of whether the named plaintiffs and the opt-ins are similarly situated.

*Id.* The plaintiff has a heavier burden to show similarity at the second stage than at the first stage. *Morgan*, 551 F.3d at 1261. If the court finds the plaintiffs are not similarly situated, it decertifies the action, dismisses the opt-in plaintiffs without prejudice, and the named plaintiffs proceed to trial on their individual overtime claims. *Hipp*, 252 F.3d at 1218. At all times, the decision to create an opt-in class under section § 216(b) "remains soundly within the discretion of the district court." *Id.* at 1219.

Presently, Plaintiffs are at the first step, seeking initial conditional certification of the class and judicial approval of a proposed notice of potential members. As such, Plaintiffs' burden at this stage hinges on their ability to show that they and the prospective opt-in plaintiffs are "similarly situated." *Morgan*, 551 F.3d at 1259 (citations omitted). The FLSA does not define "similarly situated," *see* 29 U.S.C. § 216(b), and while the Eleventh Circuit has declined to adopt a precise definition for the term, *see Morgan*, 551 F.3d at 1259, it has provided some guidance. It is clear that to maintain an FLSA collection action, the named plaintiff or plaintiffs "need only show that their positions are similar, not identical, to the positions held by the putative class members." *Grayson v. K-Mart*, 79 F.3d 1086, 1096 (11th Cir. 1996). Yet, the "similarities necessary to maintain a collective action under § 216(b) must extend 'beyond the mere facts of job duties and pay provisions.'" *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007). "Otherwise, 'it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse.'" *Id.* (citations omitted). Essentially, a plaintiff must demonstrate a "reasonable basis" for his claim of class-wide discrimination. *Grayson*, 79 F.3d at 1097. This burden, "which is not heavy, [is met] by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* (citation omitted); *see also*

*Morgan*, 551 F.3d at 1261 ("The district court's broad discretion at the notice stage is thus constrained, to some extent, by the leniency of the standard for the exercise of that discretion. Nonetheless, there must be more than 'only counsel's unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs would come from other stores.'" (citation omitted)).

**A. Evaluation of Plaintiffs' Motion for Conditional Class Certification: Plaintiffs' Showing of Others Similarly Situated and a Desire to Opt-In**

Plaintiffs contend that conditional class certification is appropriate because they have established that there are other employees who desire to opt in and who are similarly situated with regard to the FLSA violation alleged in the complaint, i.e., that Defendants have a policy and practice of paying employees a salary for non-exempt labor resulting in them not paying an overtime premium.[3] Plaintiffs have submitted detailed allegations and evidence on the issue, including declarations from four of the plaintiffs. (Docs. 22-2, 22-3, 22-4, & 22-5).

Plaintiffs, whether named or opting-in, state that they are all current or former non-management employees that were scheduled and worked in excess of forty hours in a work week. They have all testified that Defendants paid them a salary and that Defendants failed to pay them an overtime premium. Plaintiffs' job duties consisted mainly of manual labor, including cutting and packaging meat, taking customers' orders, customer service requests, stacking meat in coolers, receiving shipments and conducting inventory, and cleaning the butcher shop and grocery store. The provided evidence establishes that both deli workers and butchers have similar job requirements. Likewise, it is reasonable to conclude that other non-management employees would have sufficiently similar job requirements, including inventory, stocking, and customer service. As noted, the key to conditionally certifying a collective action is showing that there is a similarly

---

[3] The FLSA requires employers to provide overtime compensation to employees at a rate of one and one-half times their regular rate of compensation. *See generally* 29 U.S.C. § 207.

7

situated group of employees, not whether the other employees hold identical positions. *See Morgan*, 551 F.3d at 1259 (citing *Grayson*, 79 F.3d at 1096). Plaintiffs have met this burden.

Plaintiffs have also shown that others desire to "opt-in." Since filing the original complaint, four additional former employees have opted into this action. (Docs. 17,& 18). The two named plaintiffs and two of the opt-in plaintiffs have filed declarations asserting that they believe there are others who would opt-in if provided with Court-supervised notice. (Docs. 22-2 at ¶20, 22-3 at ¶22, 22-4 at ¶20, 22-5 at ¶22). Additionally, Plaintiffs have "made substantial allegations of class-wide discrimination" through allegations and evidence that the labor and timekeeping policies implemented across all three stores. *See e.g., Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1986). All non-managerial employees should have the opportunity to consult with Plaintiffs' counsel to determine if he or she has been properly paid pursuant to the FLSA. If Defendants have misclassified butchers and deli workers as salaried employees, it is reasonable to assume that the practice is applied to other positions.[4] Such allegations, if founded, may well unify individuals in the proposed class and allow for "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Hoffman-LaRoche, Inc.*, 493 U.S. at 170.

Defendants have offered no evidence to the contrary. Instead, Defendants' opposition is based on Plaintiffs' alleged failure to meet the requirements of Federal Rule of Civil Procedure 23 (*see* doc. 24), which, as discussed above, is not the applicable standard in this case. Additionally, Defendants assert that "[t]o this date, only the two plaintiffs have stated claims, which the

---

[4] Since briefing on the motion was completed, an additional opt-in plaintiff has filed a consent and declaration. (Docs. 26 & 27). Opt-in plaintiff Ruperto Veliz Veliz testifies he was employed as a baker performing duties that were manual in nature and was paid a flat weekly salary but no overtime premium for hours worked in excess of forty-hours a week. (Doc. 27 at ¶10-12).

defendants will vigorously defend and discredit . . . ." (*Id.* at 4). As an initial matter, Defendants' statement that "only two plaintiffs have stated claims" is inaccurate because three additional plaintiffs have already filed consents to "opt-in" to this collective action. (*See* docs. 17, 18, & 26). Furthermore, Defendants fail to acknowledge that they have admitted to many of the Plaintiffs' allegations in their Answer and did not pled that they are entitled to any FLSA exemptions. (*See* doc. 11). Defendants' statements that "these are two plaintiffs that have conspired to make unjustly [sic] monetary claims to their employer after their employment no longer appealed to them, [and] there are no identified other employees that have come forward to support their baseless allegations" (doc. 24 at 4) are without support. Four other employees have come forward and filed consents to "opt-in" this action, and three of those individuals have filed declarations supporting the named plaintiffs' allegations. (Docs. 22-4, 22-5, & 27-1).

Under a reasonable view of Plaintiffs' evidence, the undersigned finds they have sufficiently demonstrated that there are current or former employees of Defendants who are similarly situated to them insofar as they were subjected to Defendants' practice of paying non-exempt employees a salary and not an overtime premium. Further, Plaintiffs have shown that similarly situated employees wish to join the litigation through the filing of three consents to opt-in, even though the court has not approved or provided notice to the collective, along with their affidavits that others desire to opt-in.

### B. Plaintiffs' Proposed Notice to Prospective Opt-in Plaintiffs

"By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Hoffman-La Roche, Inc.*, 493 U.S. at 171-72. Attached to the Motion for Conditional Class Certification is a proposed seven-page notice form to be mailed to all putative class members, styled "Notice of Right to Opt-In Lawsuit." (Doc. 21-1). Defendants

make no arguments regarding the adequacy of the proposed notice.  (*See* doc. 24).

Because Plaintiffs have alleged a willful violation of the FLSA, the notice period of the conditional opt-in class is three years back from the filing of the complaint.  *See* 29 U.S.C. § 225(a); *see also Knight v. Columbus, Ga.*, 19 F3d 579, 581 (11th Cir. 1994), *cert. denied*, 513 U.S. 929 (1994) ("Actions under the FLSA are 'forever barred' unless 'commenced within two years after the cause of action accrued.'  In the case of willful violations, the limitations period is extended to three years.") (citations omitted).  Plaintiffs have the burden at trial to show a willful violation and thereby trigger the three-year limitations period.  *See Rodriquez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1274 (11th Cir. 2008).

### III. Conclusion

For the reasons stated above, and based on the undersigned's discretion, Plaintiffs' motion for class certification and notice (doc. 21) is **GRANTED**.  To facilitate the provision of notice, Defendants are **ORDERED**, within thirty days from the date of this Order, to provide Plaintiffs' counsel in a mutually agreeable format, a list containing the names and current or last known addresses of all current and former non-management employees of Mi-Pueblo Greensprings, LLC, Mi-Pueblo Supermarket, LLC, and/or Mi-Pueblo Supermarket #3, working in its Greensprings, Clanton, and Pelham, Alabama store locations who worked forty hours or more in one or more work weeks from September 25, 2016 to the present.

A separate order will be entered.

DONE this 4th day of February, 2020.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE